# Exhibit 1

## Allegheny County Department Of Court Records

### Civil/Family Division Docket Report

**Run Date and Time: 10/20/2021 - 9:33:46**

---

GD-21-010046

Stephenson etal vs Erie Indemnity Company

**Filing Date:**
8/24/2021

**Related Cases:**

**Consolidated Cases:**

**Judge:**
No Judge

**Amount In Dispute:**
$ 0

**Case Type:**
Other Tort

**Court Type:**
General Docket

**Current Status:**
Stipulation

**Jury Requested:**
Y

---

| --Parties-- | | | | | | |
|---|---|---|---|---|---|---|
| **LName** | **FName** | **MI** | **Type** | **Address** | **Initial Service Completion** | **Attorney** |
| Rubel | Susan | | Plaintiff | | -- | Edwin J. Kipela |
| Stephenson | Christina | | Plaintiff | | -- | Edwin J. Kipela |
| Barnett | Steven | | Plaintiff | | -- | Edwin J. Kipela |
| Stephenson | Troy | | Plaintiff | | -- | Edwin J. Kipela |
| Erie Indemnity Company | | | Defendant | | -- | -- |

| --Attorney-- | | | | | |
|---|---|---|---|---|---|
| **LName** | **FName** | **MI** | **Type** | **Address** | **Phone** |
| Kipela | Edwin | J. | Plaintiff's Attorney | 1133 Penn Avenue 5th Floor Pittsburgh CO 15222 | 4123229243 |
| Feirson | Steven | B | Attorney | | -- |

| --Non Litigants-- | | | | | |
|---|---|---|---|---|---|
| **LName** | **FName** | **MI** | **Type** | **Address** | **Phone** |
| | | | | | |

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| No Litigants Found | | | | | |

| --Docket Entries-- | | | | |
|---|---|---|---|---|
| **Filing Date** | **Docket Type** | **Docket Text** | | **Filing Party** |
| 10/6/2021 | Stipulation | STIPULATED EXTENSION OF TIME FOR DEFENDANT ERIE INDEMNITY COMPANY TO RESPOND TO COMPLAINT | | Erie Indemnity Company |
| 9/20/2021 | Acceptance of Service | of Complaint on behalf of Deft. Erie Indemnity Company on 09/20/2021 | | Erie Indemnity Company |
| 8/24/2021 | Complaint | | | Troy Stephenson |

| --Judgments Against-- | | |
|---|---|---|
| **Name** | **Amount** | **Satisfied(Y,N)** |
| No Judgments Found | | |

| --Events Schedule-- | | | |
|---|---|---|---|
| **Event Scheduled** | **Event Date & Time** | **Room Number** | **Judge/Hearing Officer** |
| No Information Found | | | |

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ Allegheny _____ **County**

| For Prothonotary Use Only: | |
|---|---|
| | *TIME STAMP* |
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N  A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

Lead Plaintiff's Name:
Troy Stephenson

Lead Defendant's Name:
Erie Indemnity Company

**Are money damages requested?  ☒ Yes    ☐ No**

Dollar Amount Requested:     ☐ within arbitration limits
(check one)                          ☒ outside arbitration limits

**Is this a *Class Action Suit*?    ☒ Yes    ☐ No**

**Is this an *MDJ Appeal*?    ☐ Yes    ☒ No**

Name of Plaintiff/Appellant's Attorney: Edwin J. Kilpela, Jr.

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**S E C T I O N  B**

**Nature of the Case**:    Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  Breach of Fiduciary Duty

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*Updated 1/1/2011*

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5.    Cover Sheet**

(a)(1)    This rule shall apply to all actions governed by the rules of civil procedure except the following:

(i)    actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

(ii)    actions for support, Rules 1910.1 et seq.

(iii)    actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

(iv)    actions for divorce or annulment of marriage, Rules 1920.1 et seq.

(v)    actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

(vi)    voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)    At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)    The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)    The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)    A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)    The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet.  The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| TROY STEPHENSON, CHRISTINA STEPHENSON, SUSAN RUBEL, and STEVEN BARNETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| | No. |
| Plaintiffs, | CLASS ACTION |
| v. | **CLASS ACTION COMPLAINT** |
| ERIE INDEMNITY COMPANY, | JURY TRIAL DEMANDED |
| Defendant. | |

Filed on behalf of Plaintiffs:
Troy Stephenson, Christina Stephenson, Susan Rubel, and Steven Barnett,

Counsel of record for Plaintiffs:

Edwin J. Kilpela, Jr., Esq.
Pa. No. 201595
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel.: 412.322.9243
Fax: 412.231.0246
ekilpela@carlsonlynch.com

Kevin Tucker, Esq. (He/Him)
Pa. No. 312144
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel.: 412.877.5220
ktucker@eastendtrialgroup.com

*Other Attorneys On Signature*

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| TROY STEPHENSON, CHRISTINA STEPHENSON, SUSAN RUBEL, and STEVEN BARNETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION<br><br>No.<br><br>CLASS ACTION |
|      Plaintiffs, | |
| v. | |
| ERIE INDEMNITY COMPANY, | |
|      Defendant. | |

## **NOTICE TO DEFEND**

     **YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take action within **TWENTY (20)** days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

     **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

     **IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERRAL SERVICE
Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

TROY STEPHENSON, CHRISTINA
STEPHENSON, SUSAN RUBEL and
STEVEN BARNETT, individually and on
behalf of all others similarly situated,

     Plaintiffs,

v.

ERIE INDEMNITY COMPANY,

     Defendant.

CIVIL DIVISION

No.

CLASS ACTION

## COMPLAINT – CIVIL ACTION

Plaintiffs, Troy Stephenson, Christina Stephenson, Susan Rubel and Steven Barnett ("Plaintiffs"), on behalf of themselves and all other similarly situated policyholders of Erie Insurance Exchange ("Exchange") residing in Pennsylvania, allege the following:

## INTRODUCTION

1.      Reciprocal insurance exchanges are unincorporated insurance organizations in which policyholders, also referred to as subscribers, pool their money and their collective risk to insure one another against loss.

2.      Because reciprocal insurance exchanges have no officers, employees, or corporate structure, the policyholders appoint an "attorney-in-fact" to manage and administer the business on their behalf.

3.      The attorney-in-fact serves a critical role as a fiduciary and agent for the policyholders.

4.      Plaintiffs and the putative class members in this lawsuit are policyholders of Exchange ("the Policyholders").

5.    When purchasing their insurance policies, Plaintiffs and the Policyholders all executed a Subscriber's Agreement designating Defendant Erie Indemnity Company ("Defendant or "Indemnity") as their attorney-in-fact and managing agent.

6.    As attorney-in-fact and managing agent, Indemnity is a fiduciary for all of the Policyholders and exercises total control over Exchange's operations.

7.    Indemnity receives an annual "Management Fee" for serving as the Policyholders' managing agent and attorney-in-fact.

8.    The Management Fee is set annually and is calculated as a percentage of the premiums paid by each Policyholder.

9.    Plaintiffs bring this lawsuit because, while serving as the Policyholders' managing agent and attorney-in-fact, Indemnity unilaterally sets the annual Management Fee and has allowed conflicts of interest to wholly undermine its duties of care, honesty, candor and undivided loyalty, and full disclosure to the Policyholders.

10.    Indemnity derives essentially all of its income from the Management Fee.

11.    Indemnity operates with an obvious, unabated conflict of interest in serving as the sole decision-maker when setting the Management Fee.

12.    Setting the Management Fee is a "zero sum" transaction. The more Indemnity takes from each Policyholder's premium payment as a Management Fee, the less funds that are available to Exchange for loss reserves, expenses or to be returned to the Policyholders as dividends.

13.    Over the last two years, in breach of its fiduciary duties, Indemnity has taken excessive Management Fees which have allowed Indemnity to profit substantially and pay massive dividends and special dividends to its shareholders all at the Policyholders' direct expense.

14.     The Management Fee taken during the relevant time period has approached two billion dollars a year.

15.     Indemnity has maximized the annual Management Fee charged to the Policyholders without regard to its duties of care, honesty, candor, undivided loyalty, and full disclosure.

16.     As explained below, the conflicts of interest and breaches of fiduciary duties arise from the fact that Indemnity is controlled by the heirs of Indemnity's founder who serve on Indemnity's Board of Directors (the "Board"), own a substantial percentage of all outstanding shares of Indemnity and thus derive substantial income from the dividends declared by the Board, and control Indemnity's voting shares.

17.     Indemnity has breached its fiduciary duties to the Policyholders by putting its own conflicted interests above those of the Policyholders. Indemnity has used its power as agent and attorney-in-fact to generate massive profits from the excessive Management Fee and funnel hundreds of millions of dollars in dividends and special dividends to the small group of Indemnity's controlling shareholders all at the Policyholders' direct expense.

18.     Indemnity's behavior will go unchecked unless addressed by this Court because there is no governmental agency that can enforce the fiduciary duties Indemnity owes to the Policyholders or award damages/restitution to the Policyholders.

## PARTIES

19.     Plaintiff Troy Stephenson is an individual residing in White Oak, Pennsylvania, which is located in Allegheny County.

20.     Plaintiff Christina Stephenson is an individual residing in White Oak, Pennsylvania, which is located in Allegheny County.

21.     Plaintiff Susan Rubel is an individual residing in Pittsburgh, Pennsylvania, which is located in Allegheny County.

22.     Plaintiff Steven Barnett is an individual residing in Lemont Furnace, Pennsylvania, which is located in Fayette County.

23.     At all times relevant hereto, Plaintiffs and putative class members were current or former policyholders of Exchange.

24.     Indemnity is a Pennsylvania corporation with its headquarters and principal place of business located in Erie, Pennsylvania.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction under 42 Pa.C.S. § 931.

26.     This Court has personal jurisdiction over Indemnity under 42 Pa.C.S. § 5301 because Indemnity is a domestic corporation with its principal place of business in Pennsylvania and conducts business throughout Pennsylvania.

27.     Venue is proper in this Court under Pennsylvania Rule of Civil Procedure 2179 because Indemnity regularly conducts business in Allegheny County and one or more Plaintiffs and numerous putative class members reside in Allegheny County.

## FACTUAL ALLEGATIONS

### A.     Indemnity's Fiduciary Relationship with the Exchange Policyholders

28.     Exchange, which is owned by the Policyholders, is a Pennsylvania-domiciled unincorporated association that writes property and casualty insurance.

29.     Exchange has no employees, officers, directors, or governing or advisory board of its own.

30.     The Policyholders all executed materially identical Subscriber's Agreements when they became policyholders of Exchange. A true and correct exemplar of the Subscriber's Agreement is attached hereto as Exhibit A.

31.     Upon executing their Subscriber's Agreements, the Policyholders designated Indemnity to be their agent and attorney-in-fact to manage the business of Exchange on their behalf.

32.     "[B]y acting as the common attorney-in-fact and decision maker for the subscribers (policyholders)" of Exchange, Indemnity admits that it "has the power to direct the activities of the Exchange that most significantly impact the Exchange's economic performance." Erie Indemnity Company, Quarterly Report (Form 10-Q) (Oct. 29, 2015), pp. 7, 10.

33.     As their attorney-in-fact, Indemnity is a fiduciary of the Policyholders.

34.     Indemnity's Chief Financial Officer, on Indemnity's behalf, wrote to the Financial Accounting Standards Board on February 10, 2012 to comment upon a proposed accounting standard. In describing Indemnity's duties and responsibilities, this officer represented that: "An attorney-in-fact acting as an agent for a reciprocal insurer, similar to an investment manager, functions in an agent capacity for its principal (the policyholders of the reciprocal insurer)…" and as such has a "fiduciary duty to act in the best interests of the subscribers/policyholders of the reciprocal insurer." FASB File Ref. No. 2011-220, Comment Letter No. 21 (Feb. 10, 2012).

35.      Indemnity has adopted Corporate Governance Guidelines for the Board which state, in pertinent part:

> In discharging their duties, the Directors must also be mindful of the fact that [Indemnity] is appointed to act as the Attorney-in-Fact to the Erie Insurance Exchange (the "Exchange") by the policyholders of the Exchange under the terms of the Subscriber's Agreement between each policyholder and the Company that provides generally for the ***relationship between policyholders and [Indemnity].***  Although there is limited authority that

5

expressly defines the ***duty of an attorney-in-fact to the policyholders*** of a reciprocal insurance exchange, the Directors should treat this responsibility of [Indemnity] as one that is ***fiduciary in nature***…. Consequently, to satisfy the obligations of [Indemnity] to the Exchange, the Directors should cause [Indemnity] to act in a manner they reasonably believe is in the best interests of the Exchange and its policyholders…. (emphasis added)

36.     As a fiduciary of the Policyholders, Indemnity owes the duties of care, good faith, honesty, candor, undivided loyalty, and full disclosure to the Policyholders.

37.     Indemnity has a duty to avoid conflicts of interest, to act in the best interests of the Policyholders, and to refrain from using its position to its own advantage and to the detriment of the Policyholders.

## B.     Indemnity's Annual Management Fee

38.     In return for serving as managing attorney-in-fact, Indemnity takes a percentage of the annual premiums paid by the Policyholders as a Management Fee.

39.     The Subscriber's Agreement prohibits Indemnity from setting the Management Fee rate above 25% of the annual premiums, but beyond that limitation, Indemnity alone determines what the Management Fee rate will be each year.

40.     Typically, in December of each year, Indemnity sets the Management Fee rate for the upcoming year.

41.     Indemnity can adjust the Management Fee rate during the year. This means Indemnity could reduce the rate during the year if, for example, actual expenses were less than projected, or, conversely, assuming Indemnity was not already taking the maximum of 25%, it could increase the rate during the year if circumstances changed and warranted an adjustment.

42.     The Policyholders have no ability to dispute the Management Fee rate when it is set and are forced to pay the amount Indemnity selects.

6

43.     The lower the Management Fee, the more funds that are immediately available to Exchange for the benefit of the Policyholders.

44.     Thus, Indemnity's annual decision as to what the Management Fee rate will be for the next year significantly impacts the Policyholders.

45.     Indemnity represents in its regulatory filings that the Management Fee rate is determined, "using industry information and other available information for similar services." Erie Indemnity Company, 2020 Annual Report (Form 10-K) (Feb. 25, 2021) ("2020 Form 10-K"), p. 29.

46.     Despite serving as their fiduciary, Indemnity does not direct any disclosure specifically to the Policyholders to advise them of the Management Fee rate when it is set each year. Nor does Indemnity explain or attempt to justify to the Policyholders why the Management Fee rate is set at any particular level for a given year.

47.     During the relevant period, Indemnity has abused its position of trust to profit at the direct expense of the Policyholders by taking an excessive Management Fee.

### C.     Indemnity's Background and Current Control and Management

48.     Exchange and Indemnity were founded in or around 1925 by H.O. Hirt. Indemnity has served as the managing attorney-in-fact for the Policyholders since its inception.

49.     Since approximately 1995, Indemnity has been publicly traded on NASDAQ and has a market capitalization of approximately $12 billion.

50.     Indemnity has two classes of common stock: Class A and Class B.

51.     Class A shares currently pay annual dividends of $4.14 per share. Class B shares currently pay annual dividends of $621 per share. Only Class B shares have voting rights.

52.    Descendants and family members of H.O. Hirt, directly or through trusts, own more than 20 million Class A shares, which is approximately 45% or more of the total Class A shares outstanding. *See* Erie Indemnity Company, 2021 Information Statement (Schedule 14C Information) (March 19, 2021), p. 3 (listing Indemnity's Board Chair, Thomas B. Hagen, as owner of 16,762,189 Class A shares (36.32% of all shares outstanding) and Board member Elizabeth Hirt Vorsheck as owner of 3,960,946 shares (8.6% of all shares outstanding)).

53.    In addition, primarily through the H.O. Hirt Trusts, three descendants of H.O. Hirt, Thomas B. Hagen, Elizabeth Hirt Vorsheck, and Jonathan Hirt Hagen (collectively, the "Hirt Heirs"), not only own significant percentages of Class A shares, but they also own and/or control approximately 98% of the Class B voting shares of Indemnity. *See id*. at 1 (explaining the H.O. Hirt Trusts, of which Elizabeth Hirt Vorsheck and Jonathan Hirt Hagen are trustees, along with a bank trustee, own 92.05% of Class B shares, while Thomas B. Hagen owns an additional 6.65% of Class B shares).

54.    The Hirt Heirs' ownership of Class B shares is "sufficient to determine the outcome of any matter submitted to a vote of the holders of [] Class B common stock." *Id*.

55.    At all times relevant, the Hirt Heirs have served and continue to serve on the Board.

56.    Given the Hirt Heirs' near total ownership and control of the Class B voting shares, they are able to control the composition of the Board and the outcome of any matter presented to the Board for a vote.

57.    In short, the Hirt Heirs control Indemnity.

58.    Because the Hirt Heirs dominate and control the Board, they are uniquely empowered to determine what Indemnity will take each year as a Management Fee and what Indemnity will in turn pay them each year in shareholder dividends.

8

### D.    Indemnity's Unabated Conflict of Interest

59.    Indemnity's earnings are inherently tied to the Management Fee it charges. Nearly 100% of Indemnity's annual revenue comes from the Management Fee.

60.    Indemnity recognizes and admits that, "any reduction in … the management fee rate would have a negative effect on [Indemnity's] revenues and net income." 2020 Form 10-K, Item 1A, p. 6; *see also id.* at 29.

61.    The greater the Management Fee, the greater the revenue to Indemnity; thus, Indemnity serves its own interests by maximizing the Management Fee.

62.    Further, the greater the revenue to Indemnity, the greater the dividends that get paid to the Hirt Heirs and the other shareholders of Indemnity.

63.    As a fiduciary to the Policyholders, Indemnity has a duty to avoid conflicts of interest and to act in the best interests of the Policyholders, which includes setting and maintaining an annual Management Fee rate that is no higher than objectively appropriate, and fully disclosing to the Policyholders the basis of and justification for the Management Fee rate.

64.    Indemnity's own interest in maximizing its annual revenue and, therefore, the Management Fee, directly conflicts with Indemnity's fiduciary obligations to the Policyholders.

65.    Indemnity's conflict of interest has resulted in Indemnity favoring its own financial interests, and those of its controlling shareholders, over those of the Policyholders.

66.    Although Indemnity's Board technically has an "Exchange Relationship Committee" (which presumably is intended to protect the interests of the Policyholders), Indemnity admits that the committee *has not met in years* and, in fact, *does not even have a chairperson*. *See* Erie Indemnity Company, 2021 Information Statement (Schedule 14C Information) (March 19, 2021), p. 7 (stating that the "exchange relationship committee has not

9

met in several years" and that the Board "deferred consideration on the appointment of a new committee chair until such time as it becomes necessary or advisable for the committee to meet again.")

67.    With no one protecting the interests of the Policyholders, over the course of the last two years[1], Indemnity has abused its position of trust and set the Management Fee at the maximum 25% rate in order to generate hundreds of millions of dollars in excess profits.

68.    Indemnity's decisions have been made not out of necessity, but to allow Indemnity to generate enormous excess profits to then be paid to Indemnity's Class A and Class B shareholders. The Hirt Heirs who sit on the Board profit enormously from the shareholder dividends declared by the Board.

69.    Indemnity's actions on December 10, 2019, as described in the December 13, 2019 press release set forth below in paragraph 70, are emblematic of its utter disregard of its fiduciary duties to the Policyholders.

---

[1] Defendant's egregious behavior with respect to the Management Fee extends back even further, but Plaintiffs' action is limited to the breaches occurring within two years of the filing of this Complaint and through trial.

70.     Indemnity maximizes the Management Fee charged to the Policyholders only to simultaneously increase the dividends paid to Indemnity's shareholders:

## Erie Indemnity Approves Management Fee Rate and Dividend Increase, Declares Quarterly Dividend

ERIE, Pa. (Dec. 13, 2019) - At its regular meeting held Dec. 10, 2019, the Board of Directors of Erie Indemnity Company (NASDAQ: ERIE) set the management fee rate charged to Erie Insurance Exchange, approved an increase in shareholder dividends and declared the quarterly dividend.

The Board agreed to maintain the current management fee rate paid to Erie Indemnity Company by Erie Insurance Exchange at 25 percent, effective Jan. 1, 2020. The management fee rate was 25 percent for the period Jan. 1 through Dec. 31, 2019. The Board has the authority under the agreement with the subscribers (policyholders) at Erie Insurance Exchange to set the management fee rate at its discretion; however, the maximum fee rate permissible by the agreement is 25 percent. This action was taken based on the Board's consideration and review of the relative financial positions of Erie Insurance Exchange and Erie Indemnity Company.

The Board also agreed to increase the regular quarterly cash dividend from $0.90 to $0.965 on each Class A share and from $135.00 to $144.75 on each Class B share. This represents a 7.2 percent increase in the payout per share over the current dividend rate. The next quarterly dividend is payable Jan. 22, 2020, to shareholders of record as of Jan. 7, 2020, with a dividend ex-date of Jan. 6, 2020. Erie Indemnity Company has paid regular shareholder dividends since 1933.

71.     Pursuant to Indemnity's decision to set the Management Fee at 25% for 2020, the Management Fee received by Indemnity in 2020 was $1.9 billion.

72.     Indemnity took the 25% Management Fee in 2020 in order to increase the annual dividends paid to Indemnity's shareholders by another 7.2%.

73.     In December 2020, Indemnity's abuse of its power not only continued, it worsened. The Board again set the Management Fee for the coming year at the maximum rate of 25%, and not because it was needed to pay for Indemnity's management and operating costs, but so that Indemnity could again increase the annual dividends paid to the shareholders of Indemnity by an additional 7.3%.

74.     In addition, because Indemnity had taken in so much excess profit in 2020 from the 25% Management Fee, the Board *also declared and paid an additional special dividend* at the end of December 2020 (equal to approximately 50% of the annual dividend already paid) of $2/share for each Class A share and $300/share for each Class B share.

75.     The special dividends alone, paid on December 29, 2020 to Indemnity's shareholders, amounted to over $93 million. Accordingly, the total dividends paid to Indemnity's shareholders in 2020 approached $300 million.

76.     The press release issued by Indemnity on December 8, 2020, is shown below:

Dec 08, 2020

**ERIE, PA. , DEC. 8, 2020 /PRNEWSWIRE/ -- AT ITS REGULAR MEETING HELD DEC. 8, 2020 , THE BOARD OF DIRECTORS OF ERIE INDEMNITY COMPANY (NASDAQ: ERIE ) SET THE MANAGEMENT FEE RATE CHARGED TO ERIE INSURANCE EXCHANGE, APPROVED AN INCREASE IN SHAREHOLDER DIVIDENDS AND DECLARED THE QUARTERLY DIVIDEND AND**

ERIE, Pa., Dec. 8, 2020 /PRNewswire/ -- At its regular meeting held Dec. 8, 2020, the Board of Directors of Erie Indemnity Company (NASDAQ: ERIE) set the management fee rate charged to Erie Insurance Exchange, approved an increase in shareholder dividends and declared the quarterly dividend and a special cash dividend.  Erie Indemnity Company has paid regular shareholder dividends since 1933.

Erie Insurance®

The Board agreed to maintain the current management fee rate paid to Erie Indemnity Company by Erie Insurance Exchange at 25 percent, effective Jan. 1, 2021. The management fee rate was 25 percent for the period Jan. 1 through Dec. 31, 2020. The Board has the authority under the agreement with the subscribers (policyholders) at Erie Insurance Exchange to set the management fee rate at its discretion; however, the maximum fee rate permissible by the agreement is 25 percent. This action was taken based on the Board's consideration and review of the relative financial positions of Erie Insurance Exchange and Erie Indemnity Company. The Board also agreed to increase the regular quarterly cash dividend from $0.965 to $1.035 on each Class A share and from $144.75 to $155.25 on each Class B share. This represents a 7.3 percent increase in the payout per share over the current dividend rate. The next regular quarterly dividend is payable Jan. 20, 2021, to shareholders of record as of Jan. 5, 2021, with a dividend ex-date of Jan. 4, 2021. The Board also declared a special one-time cash dividend of $2.00 on each Class A share and $300.00 on each Class B share.  This special cash dividend is payable Dec. 29, 2020, to shareholders of record as of Dec. 21, 2020, with a dividend ex-date of Dec. 18, 2020.

77.    The dividends paid to Indemnity's shareholders are funded directly from the Management Fee that Indemnity charges and takes from the Policyholders.

78.    Pursuant to the Board's decision on December 8, 2020, the annual dividends being paid to Indemnity's shareholders in 2021 will be approximately $200 million. Approximately $80-$100 million of these dividends in 2021 will go to the Hirt Heirs.

79.    In 2020 and 2021 alone, the Hirt Heirs will receive upwards of $200 million or more in dividend payments funded directly from the Policyholders.

80.    Indemnity has ignored its fiduciary obligations, abused its power, and forced the Policyholders to pay excessive Management Fees to support ever increasing annual dividends and special dividends to Indemnity's shareholders, who are largely composed of the Hirt Heirs in control of the Board.

81.    Every dollar paid as a dividend to Indemnity's shareholders is a dollar that could be paid as a dividend to the Policyholders or otherwise directly benefit the Policyholders by funding the loss reserves at Exchange and being available for the Policyholders' benefit.

82.    Below is a chart showing the quarterly dividends Indemnity paid for the last few years, along with the special dividend paid in December 2020:



83.     Even apart from the special dividend paid in December 2020, Indemnity has increased its annual shareholder dividend by 23.8% from October 2018 to the present.

84.     In contrast to the hundreds of millions of dollars of profit paid annually to the Indemnity shareholders funded by the Management Fee paid by the Policyholders, as a matter of course, the Policyholders have received nothing or only *de minimis* dividends[2] in recent years.

85.     In years past, the Policyholders received regular, substantial, annual dividends, as is customary with reciprocal insurers. Now, Indemnity chooses to enrich itself at the expense of the Policyholders.

86.     Indemnity cannot justify why, each year, at the expense of the Policyholders and despite being their fiduciary, Indemnity sets the Management Fee at the maximum rate only to use large portions of the Management Fee to pay the excess profit in ever-increasing dividends to the Hirt Heirs and Indemnity's other shareholders.

87.     Unlike Indemnity, the managing agents and attorneys-in-fact for other reciprocal insurers have protocols and processes to avoid or address conflicts of interest.

88.     Indemnity has failed to — and cannot — demonstrate that the Management Fees it has charged and collected during the past two years are justified and appropriate.

89.     By taking excessive Management Fees to benefit itself and its shareholders, Indemnity is preventing the same funds from being available to (a) pay dividends to the Policyholders, (b) fund the loss reserves at Exchange and (c) otherwise be utilized for the Policyholders' benefit.

---

[2] Like many insured Americans, Policyholders received a partial premium credit not an annual dividend in 2020 due to decreased insurance claims during the Covid-19 pandemic.

### E.    Indemnity Takes Management Fees that are Objectively Excessive

90.    Indemnity cannot justify setting the Management Fee at the maximum rate and using the excess profits generated by the Management Fee to fund dividend payments to Indemnity's shareholders at the direct expense of the Policyholders.

91.    Indemnity's profit is objectively excessive when compared to industry norms. In business, it is accepted that a company with higher-than-average risk should, in return, have the potential for higher-than-average profits. Accordingly, if Indemnity had a higher-than-average risk profile, it might be expected to also have higher-than-average profits. Indemnity, however, does not have a higher-than-average risk profile. To the contrary, Indemnity is a lower-than-average risk business. Indemnity is not an insurer, and thus, for example, has no risk of catastrophic loss events; instead, Indemnity is a managing agent and attorney-in-fact with a very stable business. Therefore, Indemnity's profits should be lower than average in line with its risk profile.

### CLASS ACTION ALLEGATIONS

92.    Plaintiffs, pursuant to Rules 1702, 1708 and 1709 of the Pennsylvania Rules of Civil Procedure, assert this action individually and on behalf of the following class of all Pennsylvania residents (the "Class"):

> All individuals or entities residing in Pennsylvania at the time of the filing of this Complaint who purchased, renewed, or otherwise had in effect an Erie Insurance Exchange policy at any time from two years prior to the filing of this Complaint through trial (the "Class Period").

93.    Excluded from the Class are Indemnity, as well as its past and present officers, employees, agents or affiliates, any judge who presides over this action, and any attorneys who enter their appearance in this action.

94.    Plaintiffs reserve the right to expand, limit, modify or amend the Class definition, including the addition of one or more subclasses, in connection with their motion for class

certification, or at any other time, based on, among other things, changing circumstances and new facts obtained during discovery.

95.    **Numerosity – Pennsylvania Rule of Civil Procedure 1702(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members and their identities may be obtained from Indemnity's books and records, but, on information and belief, the number is in the thousands.

96.    **Commonality – Pennsylvania Rule of Civil Procedure 1702(2).** This action involves questions of law and fact that are common to the Class members. Such common questions include, but are not limited to:

(a)    Whether Indemnity owed fiduciary duties to Plaintiffs and Class members;

(b)    Whether, in unilaterally setting the Management Fee at the maximum 25% during the Class Period, Indemnity breached the fiduciary duties it owed to Plaintiffs and Class members;

(c)    Whether Indemnity's actions and failures to act are breaches of its fiduciary duties;

(d)    Whether Plaintiffs and Class members have been damaged and, if so, what is the appropriate measure of such damages; and

(e)    Whether disgorgement of profits is an appropriate equitable remedy.

97.    **Typicality – Pennsylvania Rule of Civil Procedure 1702(3).** Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured from the uniform prohibited conduct described above. Each policy premium paid by Plaintiffs and Class members was subject to the same, excessive Management Fee rate, which, during the Class Period, was set unilaterally by Indemnity at the maximum 25%. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiffs and the members of the Class typical of one another.

98.    **Adequacy of Representation – Pennsylvania Rules of Civil Procedure 1702(4) and 1709.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members Plaintiffs seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; Plaintiffs intend to prosecute this action vigorously; and Plaintiffs' counsel have adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiffs and Plaintiffs' counsel.

99.    **Predominance – Pennsylvania Rule of Civil Procedure 1708(a)(1).** Common questions of law and fact predominate over any questions affecting only individual Class members. For example, Indemnity's liability and the fact of damages is common to Plaintiffs and each member of the Class. If Indemnity's unilateral setting of the Management Fee at the maximum 25% during the relevant time period represents a breach of Indemnity's fiduciary duties to Plaintiffs and the Class members, then Plaintiffs and each Class member suffered damages by purchasing policies and paying premiums subject to the excessive Management Fee rate.

100.    **Manageability – Pennsylvania Rule of Civil Procedure 1708(a)(2).** While the precise size of the Class is unknown without the disclosure of Indemnity's records, the claims of Plaintiffs and the Class members are substantially identical as explained above. Certifying the case as a class action will centralize these substantially identical claims in a single proceeding and adjudicating these substantially identical claims at one time is the most manageable litigation method available to Plaintiffs and the Class.

101.    **Risk of Inconsistent, Varying or Prejudicial Adjudications – Pennsylvania Rule of Civil Procedure 1708(a)(3).** If the claims of Plaintiffs and the Class members were tried

separately, Indemnity may be confronted with incompatible standards of conduct and divergent court decisions. Furthermore, if the claims of Plaintiffs and Class members were tried individually, adjudications with respect to individual Class members and the propriety of their claims could be dispositive on the interests of other members of the Class not party to those individual adjudications and substantially, if not fully, impair or impede their ability to protect their interests.

102.    **Litigation Already Commenced – Pennsylvania Rule of Civil Procedure 1708(a)(4).** To Plaintiffs' knowledge, there are no other cases currently pending against Defendant where a Pennsylvania plaintiff seeks to represent a class of Pennsylvania residents based on the conduct alleged in this Complaint.

103.    **The Appropriateness of the Forum – Pennsylvania Rule of Civil Procedure 1708(a)(5).** This is an appropriate forum to concentrate the litigation because a substantial number of Class members were injured in this County.

104.    **The Class Members' Claims Support Certification – Pennsylvania Rules of Civil Procedure 1708(a)(6) and (7).** Given the relatively low amount recoverable by each Class member, the expenses of individual litigation are insufficient to support or justify individual suits. Furthermore, the damages that may be recovered by the Class will not be so small such that class certification is unjustified.

105.    **The General Applicability of Indemnity's Conduct – Pennsylvania Rule of Civil Procedure 1708(b)(2).** Indemnity's unilateral setting of the Management Fee at the maximum 25% in contravention of Indemnity's fiduciary duties to Plaintiffs and Class members is generally applicable to the Class as a whole, making equitable relief appropriate with respect to the Class.

## COUNT I

## BREACH OF FIDUCIARY DUTY

106.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in the paragraphs above.

107.    Plaintiffs bring this Count on behalf of themselves and the Class.

108.    As a fiduciary of Plaintiffs and the Class, Indemnity was obligated at all times to act with the utmost degree of good faith, honesty, candor, undivided loyalty, and full disclosure, and to exercise the high degree of care required of a fiduciary serving as the agent and attorney-in-fact for Plaintiffs and the Class.

109.    In setting the Management Fee rate at 25% in December 2019 and December 2020 and allowing such amounts to be taken from the premiums paid by Plaintiffs and the Class over the course of the last two years from the filing of this Complaint—in large part to fund dividend payments to Indemnity's shareholders —Indemnity failed to comply with its fiduciary duties owed to Plaintiffs and the Class.

110.    Indemnity has also breached its fiduciary duties during the Class Period by failing to implement or utilize processes to ameliorate its conflicts of interest when self-dealing and when making decisions in which the rights and interests of the Plaintiffs and the Class are at odds with the rights and interests of Indemnity and its controlling shareholders.

111.    Instead of acting in the best interests of Plaintiffs and the Class, Indemnity has been acting in its own best interests and abusing its position of trust.

112.    Indemnity is taking excessive profit from the Management Fees it receives from Plaintiffs and the Class to enrich its own shareholders specifically including its conflicted controlling shareholders who serve on the Board.

113.    Indemnity has breached its fiduciary duties owed to Plaintiffs and the Class. As a result of Indemnity's breaches, Plaintiffs and the Class have suffered significant losses by having excessive funds diverted to Indemnity and improperly utilized for Indemnity's gain and self-interests instead of remaining with Exchange and being made available for the benefit of Plaintiffs and the Class.

WHEREFORE, on behalf of themselves and the Class, Plaintiffs ask that the Court enter judgment in their favor as follows:

(1)    Finding that Indemnity has breached its fiduciary duties;

(2)    Awarding damages in an amount to be determined at trial; and

(3)    Awarding such other relief, including disgorgement of profits or other injunctive relief, that this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Dated: August 24, 2021                          Respectfully submitted,

Edwin J. Kilpela, Jr., Esq.
PA No. 201595
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel.: 412.322.9243
Fax: 412.231.0246
ekilpela@carlsonlynch.com

Kevin Tucker, Esq. (He/Him)
PA No. 312144
Kevin J. Abramowicz, Esq. (He/Him)
PA No. 320659
Chandler Steiger, Esq. (She/Her)
PA No. 328891
Stephanie Moore, Esq.
PA No. 329447
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel.: 412.877.5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiffs*

## **<u>VERIFICATION</u>**

I, Troy Stephenson, am fully familiar with the facts set forth in this Complaint and believe them to be true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully Submitted,


Dated: August 24, 2021

*/s/ Troy Stephenson*
Troy Stephenson
E-Signed with Permission

## <u>VERIFICATION</u>

I, Christina Stephenson, am fully familiar with the facts set forth in this Complaint and believe them to be true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully Submitted,


Dated: August 24, 2021                    */s/ Christina Stephenson*
                                          Christina Stephenson
                                          E-Signed with Permission

2

## **<u>VERIFICATION</u>**

I, Susan Rubel, am fully familiar with the facts set forth in this Complaint and believe them to be true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully Submitted,

Dated: August 24, 2021

*/s/ Susan Rubel*
Susan Rubel
E-Signed with Permission

## **VERIFICATION**

I, Steven Barnett, am fully familiar with the facts set forth in this Complaint and believe them to be true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully Submitted,

Dated: August 24, 2021

*/s/ Steven Barnett*
Steven Barnett
E-Signed with Permission

4

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiffs

Signature:

Name: Edwin J. Kilpela, Jr.

Attorney: 201595

# Exhibit A

| **APPLICANT(S) PLEASE READ** | **WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.** |
|---|---|

## SUBSCRIBER'S AGREEMENT

The Subscriber ("you" or "your") agrees with the other Subscribers at ERIE INSURANCE EXCHANGE ("ERIE"), a Reciprocal/Inter-Insurance Exchange, and with their Attorney-in-Fact, the Erie Indemnity Company ("we" or "us"), a Pennsylvania corporation with its Home Office in Erie, Pennsylvania, to the following:

1) You agree to pay your policy premiums and to exchange with other ERIE Subscribers policies providing insurance for any insured loss as stated in those policies.

2) You appoint us as Attorney-in-Fact with the power to: a)  exchange policies with other ERIE Subscribers; b)  take any action necessary for the exchange of such policies; c)  issue, change, non-renew or cancel policies; d)  obtain reinsurance; e)  collect premiums; f)  invest and reinvest funds; g)  receive notices and proofs of loss; h)  appear for, compromise, prosecute, defend, adjust and settle losses and claims under your policies; i)  accept service of process on behalf of ERIE as insurer; and j)  manage and conduct the business and affairs of ERIE, its affiliates and subsidiaries. This power of attorney is limited to the purposes described in this Agreement.

3) You agree that as compensation for us:  a)  becoming and acting as Attorney-in-Fact; b)  managing the business and affairs of ERIE; and c)  paying general administrative expenses, including sales commissions, salaries and employee benefits, taxes, rent, depreciation, supplies and data processing, we may retain up to 25% of all premiums written or assumed by ERIE. The rest of the premiums will be used for losses, loss adjustment expenses, investment expenses, damages, legal expenses, court costs, taxes, assessments, licenses, fees, any other governmental fines and charges, establishment of reserves and surplus, and reinsurance, and may be used for dividends and other purposes we decide are to the advantage of Subscribers.

4) You agree that this Agreement, including the power of attorney, shall have application to all insurance policies for which you apply at ERIE, including changes in any of your coverages.

5) You agree to sign and deliver to us all papers required to carry out this Agreement.

6) This Agreement, including the power of attorney, shall not be affected by your subsequent disability or incapacity.

7) This Agreement is and shall be binding upon you, us, and all executors, administrators, successors and assigns.

I certify that I have given true and complete answers to the questions in this application.
I have been given notice of the **Notice of Insurance Information Practices.**

| **APPLICANT(S) TO ERIE INSURANCE EXCHANGE SIGN HERE** | **SUBSCRIBER'S SIGNATURE** | In witness whereof the Subscriber hereto sets his hand and seal ............................................................... | Date ............... |
|---|---|---|---|

**WARNING: IT IS UNDERSTOOD THAT ONLY $1,000,000 OF PERSONAL LIABILITY PROTECTION CAN BE BOUND BY AN AUTHORIZED AGENT OF ERIE INSURANCE GROUP.  LIMITS OF PROTECTION GREATER THAN $1,000,000 MUST BE APPROVED BY THE HOME OFFICE AND NO INSURANCE IS AFFORDED UNLESS AND UNTIL THE APPLICATION IS ACCEPTED BY THE HOME OFFICE OF THE ERIE INSURANCE GROUP.**

**DO NOT BIND COVERAGE ON ANY PREVIOUSLY CANCELLED RISKS.**

Do you consider this an acceptable risk? ......... Agent's Signature ................................................................................................................

UF2239 5/17

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| TROY STEPHENSON, CHRISTINA STEPHENSON, SUSAN RUBEL, and STEVEN BARNETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |

TROY STEPHENSON, CHRISTINA
STEPHENSON, SUSAN RUBEL, and
STEVEN BARNETT, individually and on
behalf of all others similarly situated,

      Plaintiffs,

   v.

ERIE INDEMNITY COMPANY,

      Defendant.

CIVIL DIVISION

No. GD-21-010046

CLASS ACTION

**ACCEPTANCE OF SERVICE**

Filed on behalf of Erie Indemnity Company, Defendant

Counsel of Record:

Steven B. Feirson (PA 21357)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
215-994-4000
steven.feirson@dechert.com

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| TROY STEPHENSON, CHRISTINA STEPHENSON, SUSAN RUBEL, and STEVEN BARNETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| | No. GD-21-010046 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| ERIE INDEMNITY COMPANY, | |
| Defendant. | |

## ACCEPTANCE OF SERVICE

I, Steven B. Feirson, Esquire, do hereby represent that I am authorized to and do hereby accept service of Plaintiffs' Class Action Complaint in Civil Action on behalf of Defendant Erie Indemnity Company in the above-captioned matter.

Dated:  September 20, 2021   Respectfully submitted,

       /s/ *Steven B. Feirson*
       Steven B. Feirson (PA 21357)
       Dechert LLP
       Cira Centre
       2929 Arch Street
       Philadelphia, PA 19104-2808
       215-994-4000
       steven.feirson@dechert.com

       *Counsel for Defendant Erie Indemnity Company*

## **CERTIFICATE OF COMPLAINCE**

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated: September 20, 2021

/s/ *Steven B. Feirson*
Steven B. Feirson (PA 21357)
*Counsel for Defendant Erie Indemnity Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2021, the foregoing Acceptance of Service has

been filed electronically on the DCR file system and that a true and correct copy of the foregoing

Acceptance of Service has been served electronically through the DCR file system, as well as via

e-mail, on all counsel of record.


Dated:  September 20, 2021                    /s/ *Steven B. Feirson*
                                              Steven B. Feirson (PA 21357)
                                              *Counsel for Defendant Erie Indemnity Company*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| TROY STEPHENSON, CHRISTINA STEPHENSON, SUSAN RUBEL, and STEVEN BARNETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| | No. GD-21-010046 |
| Plaintiffs, | CLASS ACTION |
| v. | **STIPULATED EXTENSION OF TIME FOR DEFENDANT ERIE INDEMNITY COMPANY TO RESPOND TO COMPLAINT** |
| ERIE INDEMNITY COMPANY, | |
| Defendant. | Filed on behalf of Erie Indemnity Company, Defendant |

Counsel of Record:

Steven B. Feirson (PA 21357)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
215-994-4000
steven.feirson@dechert.com

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA**

| | |
|---|---|
| TROY STEPHENSON, CHRISTINA STEPHENSON, SUSAN RUBEL, and STEVEN BARNETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| | No. GD-21-010046 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| ERIE INDEMNITY COMPANY, | |
| Defendant. | |

**STIPULATED EXTENSION OF TIME FOR DEFENDANT ERIE INDEMNITY
COMPANY TO RESPOND TO COMPLAINT**

The parties to this matter, through their undersigned counsel, hereby agree that the

deadline by which Defendant Erie Indemnity Company must answer, plead, move, or otherwise

respond to Plaintiffs' Complaint shall be and hereby is extended to November 10, 2021.


CARLSON LYNCH                              DECHERT LLP


*/s/Edwin J. Kilpela*                          */s/Steven B. Feirson*
Edwin J. Kilpela, Jr., Esq.                   Steven B. Feirson, Esq.
Pa. No. 201595                                Pa. No. 21357
1133 Penn Avenue, 5th Floor                   Cira Centre
Pittsburgh, PA 15222                          2929 Arch Street
(412) 322-9243                                Philadelphia, PA 19104
ekilpela@carlsonlynch.com                     (215) 994-4000
                                              steven.feirson@dechert.com

*Counsel for Plaintiffs*
                                              *Counsel for Defendant Erie Indemnity
                                              Company*

Dated: October 6, 2021

## <u>CERTIFICATE OF COMPLAINCE</u>

I certify that this filing complies with the provisions of the Public Access Policy of the

Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that

require filing confidential information and documents differently than non-confidential

information and documents.

Dated:  October 6, 2021                    /s/ *Steven B. Feirson*
                                                       Steven B. Feirson (PA 21357)
                                                       *Counsel for Defendant Erie Indemnity Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2021, the foregoing Stipulated Extension of Time for

Defendant Erie Indemnity Company to Respond to Complaint has been filed electronically on

the DCR file system and that a true and correct copy of the foregoing Acceptance of Service has

been served electronically through the DCR file system, as well as via e-mail, on all counsel of

record.


Dated:  October 6, 2021                                    /s/ *Steven B. Feirson*
                                                          Steven B. Feirson (PA 21357)
                                                          *Counsel for Defendant Erie Indemnity Company*